UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24873-ALTMAN

**AIRCRAFT PARTSBASE, LLC**,

    *Appellant*,

*v.*

**NABOO ROYAL CRUISER LLC**,

    *Appellee.*

_____/

## ORDER AFFIRMING BANKRUPTCY COURT

Before us is an appeal from *In re Profundity LLC, et al.*, Case No. 21-16720 (the "Bankruptcy Case"),[1] a contract dispute between our Appellee—Naboo Royal Cruiser, LLC ("Naboo")—and our Appellant—Aircraft Partsbase, LLC ("Partsbase"). On August 14, 2024, the parties entered into an Aircraft Purchase and Sale Agreement (the "Agreement"), *see* Expediated Motion for Sale [Bankr. ECF No. 603] at 19–48, for Naboo's Gulfstream Aerospace G-IV SP (the "Aircraft"). The Bankruptcy Court approved the sale on September 5, 2024. *See* Order Approving Sale [Bankr. ECF No. 636]. On October 12, 2024, Naboo filed a Motion for Turnover [Bankr. ECF No. 649], alleging that Partsbase breached the Agreement. On November 17, 2024, the Bankruptcy Court granted that motion. *See* Deposit Order [Bankr. ECF No. 680]. This appeal followed. Having carefully examined the briefs and the record—and for the reasons we outline below—we **AFFIRM** the Bankruptcy Court's Order.

---

[1] While the relevant portions of the record were transmitted to us as a matter of course, *see* Transmittal of Record [ECF No. 5], we'll refer directly to the underlying bankruptcy case dockets. Citations to the Bankruptcy Case will be styled [Bankr. ECF No. X].

## THE FACTS

Our Appellee, Naboo, owned and leased private jets to non-charter operators. *See* Appellant's Brief [ECF No. 8] at 7. On August 23, 2023, Naboo filed for Chapter 11 Bankruptcy. *See* Joint Administration Order [Bankr. ECF No. 9]. On August 14, 2024, our Appellant, Partsbase, entered into the Agreement to purchase the Aircraft, which the Bankruptcy Court approved. *See* Order Approving Sale. On August 21, 2024, Partsbase placed $100,000 with Gilchrist Aviation Law (the "Escrow Deposit"). *See* Appellant Brief at 8; *see also* Demand Letter [Bankr. ECF No. 649-3] at 2 ("The Deposit was funded on August 21, 2024."). Section 4 of the Agreement included a provision governing inspection of the Aircraft:

> **Inspection; Acceptance or Rejection of Aircraft**. Within fifteen (15) business days of placing the Deposit, Purchaser shall perform a Pre-Purchase Inspection (the "PPI") which shall allow Buyer to perform detailed visual inspection, Logbook Review, Borescope Inspection, & Complete Systems Check of the Aircraft at the current aircraft location. Within five (5) business days of completion of the visual inspection, Purchaser will notify Seller of its acceptance of the Aircraft and intention to continue the transaction ("Acceptance") or the rejection of the Aircraft and its intent to terminate the Agreement ("Termination"). If Purchaser communicates its Acceptance, the Deposit shall become non-refundable. If Purchaser fails to timely communicate a Termination, the Deposit shall become non-refundable.

Agreement § 4. On September 9, 2024, Partsbase began the PPI. *See* Appellant Brief at 9. "The PPI began with a visual inspection by Rich Donahue on September 9, 2024," and "continued on September 11, 2024, at which time a second mechanic conducted additional review of the Aircraft." Affidavit of Suleyman Leyla ("Leyla Aff.") [Bankr. ECF No. 674-1] ¶ 6–7. During the September 11, 2024, inspection, Partsbase "learned of potentially high Exhaust Gas Temperature ('EGT') anomalies detected in one of the engines." *Id.* ¶ 8. "That information was not disclosed by [Naboo], but had been reported by the pilots and was discovered only by review of their logbooks during the PPI work on that date." *Id.* ¶ 9. Because of the EGT anomaly, Partsbase "asked to inspect certain Flight Warning Computer ('FWC') information from the Debtor to clarify this concern." *Id.* ¶ 10. Naboo produced the FWC information on September 17, 2024. *See id.* ¶ 12. But that information "did not provide

2

sufficient answer[s,]" so Partsbase "requested a 'Power Assurance Run' ('the PAR')," *id.* ¶ 13, which was "conducted on September 18, 2024," *id.* ¶ 14. Partsbase received the results of the PAR on "September 19, 2024, at which time [the] PPI was 'complete.'" *Id.* ¶ 15.

Five business days later, on September 26, 2024, Partsbase "provided notification to all parties" that, "[a]fter thorough evaluation[,] we decided to reject the aircraft within the 5 business days as per the APA and kindly ask you to release back the deposit." *Id.* ¶ 17 (quoting September 26, 2024, Email Terminating Sale [Bankr. ECF No. 673-7]). Naboo refused, having earlier said that "the deposit at issue is now non-refundable." September 24, 2024, Email Regarding Deposit [Bankr. ECF No. 649-3] at 2.

The Agreement also included a liquidated damages provision, which read, in pertinent part, as follows:

> **Purchaser's Inability or Failure to Perform.** So long as Seller is not otherwise in default under this Agreement, and subject to Excusable Delays up until the closing deadline, if (i) due to any act or failure to act by Purchaser, Closing does not timely occur as provided for in the Agreement, or (ii) Purchaser otherwise materially defaults under this Agreement, then Seller may terminate this Agreement by delivering written notice to Purchaser and the Escrow Agent and, as Seller's sole and exclusive remedy for Purchaser's failure to perform, the Escrow Agent will immediately pay the sum of $100,000 to Seller as liquidated damages, Purchaser and Seller hereby agreeing in good faith that the actual damages, if any, suffered by Seller as a result of Purchaser's default would be speculative and difficult to ascertain, and that the amount of liquidated damages is not a penalty. Upon payment of the liquidated damages to Seller, this Agreement will terminate at which time neither Party will have any further obligation to the other Party with respect to this Agreement or the Aircraft other than provisions that by their terms survive termination.

Agreement § 7. And Section 5, "Delivery and Closing," says: "Title and risk of loss or damage to the Aircraft will pass to Purchaser at Closing. Delivery of the aircraft shall in any case occur not later than 25th September 2024 or otherwise agreed date." *Id.* § 5(a).

On October 12, 2024, Naboo moved to disburse the Escrow Deposit. *See generally* Motion for Turnover. In doing so, Naboo argued that "[t]he Escrow Deposit was placed on or before August 21, 2024." *Id.* at 2. "Hence," Naboo said, "in accordance with the terms of the Sale Agreement, the

3

deadline for the visual inspection was September 11, 2024 and the deadline to timely communicate a Termination was September 18, 2024. Aircraft Partsbase, LLC did not timely communicate a Termination by September 18, 2024. The Escrow Deposit therefore became non-refundable." *Ibid*.

Partsbase filed a Counter Motion for Turnover [Bankr. ECF No. 676]. On October 31, 2024, the Bankruptcy Court held an evidentiary hearing on the motions, *see* October 31, 2024, Hearing Transcript ("Order Tr.") [ECF No. 6], and later granted Naboo's Motion for Turnover and denied the Counter Motion for Turnover, *see* Deposit Order at 1. In the Bankruptcy Court's view:

> [T]he Court hereby finds that the Escrow Deposit became non-refundable on September 18, 2024. Furthermore, in accordance with the express terms of the Sale Agreement, the closing and the delivery of the Aircraft was to take place not later than September 25, 2024. Aircraft Partsbase breached the Sale Agreement by refusing to close and take delivery of the Aircraft by the deadline set in the contract entitling the debtor to the Escrow Deposit as liquidated damages.

*Id.* ¶ 4. The Bankruptcy Court then ordered the escrow agent "to turn over and deliver via wire transfer the Escrow Deposit in the amount of $100,000 to" Naboo. *Id.* at Prayer for Relief ¶ 1. On December 11, 2024, Partsbase appealed the Deposit Order. *See* Notice of Appeal [Bankr. ECF No. 683]. The matter is now ripe for our consideration. *See* Resp. [ECF No. 16]; Reply [ECF No. 20].

## THE LAW

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (quoting 28 U.S.C. § 158(a)). "In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *see also In re Gaddy*, 851 F. App'x 996, 999 (11th Cir. 2021) ("A bankruptcy court abuses its discretion when it either misapplies the law or bases its decision on factual findings that are clearly erroneous."). "*De novo* review requires the court to make a judgment independent of the bankruptcy court's, without

deference to that court's analysis and conclusions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001) (emphasis added). And "[t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005).

## ANALYSIS

The question presented by this appeal is whether the Bankruptcy Court clearly erred when it found that Naboo's course of conduct neither waived nor modified the Agreement's requirement that the PPI be completed by September 11, 2024. *See* Statement of Issues to Be Presented [Bankr. ECF No. 691] (arguing only that "[t]he bankruptcy court erred when it found that [Partsbase] did not timely provide a Termination Notice pursuant to the terms of the [Agreement] and granted [Naboo's] Motion for Turnover"); *see also* Appellant Brief at 13 (arguing only that the "Agreement provisions were waived by the parties' course of conduct").

### I.  Partsbase Appeals a Finding of Fact

The Bankruptcy Court granted the Motion for Turnover after concluding that Naboo was entitled to the Escrow Deposit because it had become non-refundable on September 18, 2024. Even if it hadn't become non-refundable, the court continued, Partsbase breached the contract by not closing and taking delivery of the Aircraft as of September 25, 2024. Naboo was thus *also* entitled to the Escrow Deposit as liquidated damages. At the October 31, 2024 hearing, the Bankruptcy Court explained as follows:

> The purchase agreement requires a deposit within five days of execution of the agreement, and a[n] inspection period to take place 15 days after placement of the deposit. Section 3 of [the Agreement] states that within five days of the execution of this agreement the $100,000 is placed with Gilchrist Aviation Law. There's no dispute that that happened on August 21, 2024.
>
> Section 4 of the [Agreement] provides that within 15 days of placing the deposit[,] purchaser shall perform a prepurchase inspection, the PPI, which allows buyer to perform a detailed visual inspection, log book review, borehole inspection.

5

> The PPI began, I guess, on September 9th and 11th. However, when [those] 15 days expired, there was no notice of termination that was issued, and furthermore, there was no request for an extension of that period. When the purchaser did not terminate the purchase agreement before or on the deadline of September 18th, nor request an extension, [so] that deposit became nonrefundable.

Order Tr. at 19:23–20:19 "[O]n this record," the Bankruptcy "Court grant[ed] [Naboo's] turnover motion, [and] denie[d] Aircraft Partsbase, LLC's counter motion for turnover." *Id.* at 21:3–6 (first citing the Motion for Turnover; and then citing the Counter Motion for Turnover). The Bankruptcy Court then issued its written order, holding that:

> [T]he Escrow Deposit became non-refundable on September 18, 2024. Furthermore, in accordance with the express terms of the Sale Agreement, the closing and the delivery of the Aircraft was to take place not later than September 25, 2024. Aircraft Partsbase breached the Sale Agreement by refusing to close and take delivery of the Aircraft by the deadline set in the contract entitling the debtor to the Escrow Deposit as liquidated damages.

Deposit Order ¶ 4. In other words, the Bankruptcy Court made two findings under the plain terms of the Agreement: *one*, that the Escrow Deposit became non-refundable on September 18, 2024, when Partsbase failed to communicate termination by that date; *two*, that Partsbase was in breach when it refused to close and take delivery of the Aircraft by September 25, 2024, and Naboo was accordingly entitled to the Escrow Deposit as liquidated damages. *See ibid.*; *see also* Order Tr. at 19:23–21:6.

Partsbase doesn't contest the Bankruptcy Court's interpretation of the Agreement. *See generally* Appellant's Brief (arguing only that the Bankruptcy Court erred when it failed to find that, by continuing to provide information "without objection, [Naboo] waived any argument that the PPI should have been completed by September 11"). We'll therefore accept the Bankruptcy Court's legal conclusions as to the parties' contractual obligations. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *In re Freeman*, 956 F.2d 252, 255 (11th Cir. 1992) ("Bankruptcy Rule 8006 directs an appellant to file with the clerk and serve on the appellee 'a designation of the items to be included in the record on appeal and a statement of the

6

issues to be presented.' An issue that is not listed pursuant to this rule and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal." (quoting FED. R. BANKR. P. 8006)); *In re Powers*, 860 F. App'x 159, 161 n.5 (11th Cir. 2021) (finding that an issue is waived where the appellant "failed to identify the failure to recuse in their statements of issues on appeal to the district court pursuant to Fed. R. [Bankr.] P. 8009(a)(1)(A)").

What Partsbase *does* dispute is the Bankruptcy Court's determination that the parties' course of conduct didn't waive or modify the Agreement's requirements. Partsbase therefore appeals the Bankruptcy Court's factual findings, which we review for clear error. *See In re JLJ Inc.*, 988 F.2d at 1116 ("[The district court] must accept the bankruptcy court's factual findings unless they are clearly erroneous."); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004) ("Whether the parties have validly modified a contract is usually a question of fact."); *Royal Caribbean Cruises Ltd. v. Cap. Jazz Inc.*, 2024 WL 962370, at *8 (S.D. Fla. Mar. 6, 2024) (Gayles, J.) ("The question of waiver is generally a question of fact.").

## II.  The Bankruptcy Court's Factual Finding Was Not Clear Error

We easily conclude that the Bankruptcy Court's determination was not clearly erroneous. As an initial matter, the Agreement contains an anti-waiver provision:

> **Waiver; Severability**. Either Party's failure to enforce any provision of this Agreement against the other Party will not be construed as a waiver thereof so as to excuse the other Party from future performance of that provision or any other provision.

Agreement § 11(e). Naboo argues that this "express and unambiguous non-waiver clause [ ] explicitly precludes any waiver of strict performance by conduct." Resp. at 9. But that's not quite right. True, "the Eleventh Circuit has recognized that anti-waiver provisions can be enforceable and have been upheld by Florida courts." *In re S & I Invs.*, 421 B.R. 569, 581 (Bankr. S.D. Fla. 2009) (Ray, J.), *aff'd sub nom.*, *Ritenour v. Osborne*, 2010 WL 2220413 (S.D. Fla. June 3, 2010) (Gold, J.), *aff'd sub nom.*, *In re SiInvestments*, 424 F. App'x 851 (11th Cir. 2011). "However, such recognition is not without limitation."

7

*Ibid.* In other words, a "'no waiver' provision is not itself determinative and does not operate as a complete bar to finding a waiver[.]" *Gen. Elec. Cap. Corp. v. Bio-Mass Tech, Inc.*, 136 So. 3d 698, 703 (Fla. 2d DCA 2014). "Rather, this provision should be considered as one factor in the larger waiver analysis." *Ibid.* That's because "[a]n antiwaiver clause itself can be waived." *Ibid.* (citing Samuel Willsiston & Richard A. Lord, *Williston on Contracts* § 39:36 (4th ed. 2000) ("The general view is that a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract. . . . This general rule, that a party to a written contract may waive a provision despite the existence of an antiwaiver or failure to enforce clause, is based on the view that the nonwaiver provision itself, like any other term in the contract, is subject to waiver by agreement or conduct during performance.")).

"Florida law defines waiver as 'the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right.'" *Multiquimica Dominicana v. Chemo Int'l, Inc.*, 707 F. App'x 692, 695 (11th Cir. 2017) (quoting *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005)). "To establish waiver, a party must show (1) the existence at the time of the alleged waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of that right; and (3) the intention to relinquish that right." *Ibid.* (first citing *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006); and then citing *Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989)).

"Florida law[,]" therefore, "recognizes that waiver may be express or implied by conduct." *Ibid.* Here, the Bankruptcy Court found that "there was no argument that Aircraft Partsbase formally asked [Naboo] for an extension to perform the visual inspection and that [Naboo] expressly agreed to any extensions of the closing date." Deposit Order ¶ 3. And Partsbase doesn't argue that it did *expressly* ask for a waiver of either Section 4, the anti-waiver provision, or the closing provision. Instead,

8

Partsbase says that it "relied on [Naboo's] failure to object to the extension of the inspection process established through the parties' course of dealing." Reply at 5. The waiver (if any) was therefore implied.

"But in order for waiver to be implied by conduct, the acts, conduct, or circumstances must make out a clear case." *Multiquimica*, 707 F. App'x at 695 (first citing *Goodwin*, 939 So. 2d at 1104 (citations omitted); and then citing *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 852 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014)). "Further, Florida courts have recognized that waiver does not arise merely from 'forbearance for a reasonable time.'" *Ibid.* (citing *Fireman's Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. 2d DCA 1967)). Partsbase must therefore show that Naboo's "acts, conduct, or circumstances . . . make out a clear case" of waiver. *Ibid.*; *see also ibid.* ("Waiver is an affirmative defense, so the party invoking the defense has the burden of proof.").

The Bankruptcy Court concluded that Naboo hadn't waived *any* provisions—either expressly or by implication. *See* Deposit Order ¶ 3 ("[T]here was no argument that Aircraft Partsbase formally asked [Naboo] for an extension to perform the visual inspection and that [Naboo] expressly agreed to any extensions of the closing date."); Order Tr. at 17:23–25, 19:19:10–12 (finding that "the arguments . . . that [the time to communicate termination] was extended by virtue of them requesting the additional information that [Naboo] sent" was "not a reasonable review of that contract"). And we cannot say that the Bankruptcy Court's conclusion was clearly erroneous. *See Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) (Posner, J.) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."). Indeed, we find nothing in Naboo's cooperation with the inspection, its decision to turn over additional information, and its failure to *immediately* protest Partsbase's tardy communication of termination or acceptance that would indicate Naboo's "intention to relinquish"

9

the anti-waiver provision. *Multiquimica*, 707 F. App'x at 695. Nor do we think this conduct evinces any clear "intention to relinquish" Naboo's rights, *ibid.*—namely, that the PPI be completed by September 11, 2024, that termination be communicated by September 18, 2024, and that the Aircraft be turned over by September 25, 2024. After all, "waiver does not arise merely from 'forbearance for a reasonable time.'" *Ibid.* (citing *Fireman's Fund*, 195 So. 2d at 24).

In sum, "[t]he [B]ankruptcy [C]ourt's findings of fact are not clearly erroneous" because, "in light of all the evidence, we are [not] left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm.*, 443 F.3d at 770. We therefore **AFFIRM** the Bankruptcy Court's Deposit Order.

\*   \*   \*

After careful review, we **ORDER and ADJUDGE** that the Bankruptcy Court's Order Granting Naboo's Motion for Turnover and Denying Partsbase's Counter Motion for Turnover [Bankr. ECF No. 680] is **AFFIRMED**.

**DONE AND ORDERED** in the Southern District of Florida on March 2, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record